IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| DILUSSO PROPERTIES CORP.<br><br>**Plaintiff,**<br><br>v.<br><br>SANTANDER SECURITIES, LLC<br><br>**Defendant.** | **CIVIL NO. 24-1476 (RAM)** |

<u>OPINION AND ORDER</u>

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Defendant Santander Securities, LLC's ("Defendant" or "SLLC") *Motion to Dismiss*. (Docket No. 11). For the reasons outlined below, the Court hereby **GRANTS** the *Motion to Dismiss*.

I.   FACTUAL BACKGROUND

Plaintiff Dilusso Properties Corp. ("Plaintiff" or "Dilusso") is a corporation organized and operating in Puerto Rico that engages in the construction, remodeling, and renting of properties. (Docket No. 1 ¶ 14). SLLC is a registered broker/dealer and investment adviser that, as of the filing of the *Complaint*, is domiciled in Delaware. Id. ¶¶ 16-18. In 2012, Dilusso entered into an investment agreement with SLLC over investment account XXX-XXXX94 (the "Account"). Id. ¶ 25. SLLC was tasked with investing Dilusso's liquid assets "wisely in a safe and conservative manner" to obtain "capital preservation and a fixed income return," with

the fixed income return being "reinvested for capital appreciation." Id. ¶ 26.

Between 2012 and 2015, SLLC recommended that Dilusso follow an investment strategy (the "Investment Strategy") involving the "purchase and hold of Puerto Rico Closed End Funds products" ("CEFs"). Id. ¶ 27. Dilusso asserts that the Investment Strategy was "unsuitable" because it relied on various materially false representations: (1) the CEFs Dilusso purchased were only invested in short-term Puerto Rico bonds; (2) Dilusso should buy the CEFs to obtain capital preservation and a fixed income return; (3) the Puerto Rico bonds were "very safe" because of their short-term maturity; (4) the repayment of Dilusso's principal was constitutionally guaranteed; and (5) even if the bonds temporarily lost value, "they would always pay the monthly dividends and repay their full principal amount back at maturity." Id. ¶ 28. From 2012 to 2015, Dilusso followed SLLC's recommendations and invested its entire portfolio (approximately $357,000) into CEFs, which it continued to hold. Id. ¶ 30. By 2013, the CEFs had "started to sustain an unrealized loss in value." Id. ¶ 29. Dilusso appears to have first realized that it was allegedly being "duped" by SLLC in 2016. See Dilusso Props. Corp. v. Santander Sec. LLC, Civil No. 23-1346 (Docket No. 14 at 2-3).

Between 2019 and 2021, Dilusso contacted SLLC's broker, Manuel Dias-Collazo ("Mr. Collazo"), to ask if it should sell the

CEFs to mitigate its losses. (Docket No. 1 ¶¶ 29, 31); <u>Dilusso</u>
<u>Props. Corp. v. Santander Sec. LLC</u>, Civil No. 23-1346 (Docket No.
1 ¶ 20). Mr. Collazo recommended that Dilusso hold the CEFs for
the reasons articulated above. (Docket No. 1 ¶ 29). Sometime during
this period, Dilusso learned that the CEFs in the Account were
invested in bonds in a way that meant they were not safe
investments, could stop paying interest and lose capital, and were
not suitable for ensuring "safe fixed income and capital
preservation."[1] <u>Id.</u> ¶ 31. In January 2020, Dilusso had transferred
"all of its securities" out of the Account and acknowledges that
"with that transfer, [SLLC's contractual duties and breaches
towards Dilusso concluded."[2] (Docket No. 18 at 11). Dilusso claims
that after following SLLC's advice, it lost approximately
$143,990.84 in capital, as well as the "expected future earnings
that those moneys should have and failed to produce." (Docket No.
1 ¶ 5).

## II.  PROCEDURAL BACKGROUND

Dilusso first tried to recover its alleged losses by filing
a claim with the Financial Industry Regulatory Authority
("FINRA"), as the parties agreed to submit any claims arising under
their contract to FINRA for arbitration. <u>Id.</u> ¶ 4. On January 19,

---

[1] It is unclear why Dilusso waited at least three years (from 2016 to at least 2019) to ask Mr. Collazo whether it should sell the CEFs.

[2] It is unclear why Dilusso states it may have sought advice from SLLC through 2021 if the parties' relationship terminated in January 2020.

2022, Dilusso presented FINRA with a Statement of Claim against the SLLC. Id. ¶ 5. On July 6, 2022, FINRA found Dilusso's claims were time-barred for falling outside of the six-year statute of limitations under FINRA Rule 12206 and dismissed the claims "in their entirety." Id. (Docket Nos. 1 ¶ 8 and 11 at 1).

On June 30, 2023, Dilusso sued SLLC in the United States District Court for the District of Puerto Rico for alleged violations of Section 10(b) of the Securities Exchange Act of 1934, 5 U.S.C. §§ 78j, et seq., its implementing regulation, Exchange Act Rule 10b-5, 17 C.F.R. §§ 240.10b-5, and Puerto Rico law. (Docket No. 1 ¶ 9); (Dilusso Props. Corp. v. Santander Sec. LLC, Civil No. 23-1346). "The complaint alleged securities fraud and sought compensation for losses sustained in connection with the Puerto Rico municipal bond market crash of 2016." (Docket No. 1 ¶ 9); (see also Dilusso Props. Corp. v. Santander Sec. LLC, Civil No. 23-1346 (Docket No. 1)).

On September 12, 2024, the district court entered an opinion and order dismissing the federal claims and declining to exercise supplemental jurisdiction over the Commonwealth law claims, which were dismissed without prejudice. (Dilusso Props. Corp. v. Santander Sec. LLC, Civil No. 23-1346 (Docket No. 14)). The Court noted that Dilusso "realized it was allegedly being duped by

defendant [SLLC]" in January 2016.[3] Id. at 3. "[D]espite the
assertion of ongoing misrepresentations" by SLLC through 2021, the
*Complaint* did not provide "a single misrepresentation" made by
SLLC after January 2016 and Dilusso's federal claims were dismissed
as time barred. Id.

Dilusso filed the present *Complaint* on October 15, 2024,
claiming that SLLC has committed an array of violations under
Puerto Rico contract law, including fault, fraud, *dolo* ("deceit"),
negligence, negligent supervision, vicarious liability, breach of
contract, and breach of fiduciary duty.[4] Id. at 5, 9, 14, 16. In
essence, Dilusso claims that SLLC breached its contractual duties
by wrongly and misleadingly advising it on investment strategies
and purchases leading up to the 2016 Puerto Rico bond crash and by
failing to advise it to sell its investments after the crash.
Dilusso seeks compensatory damages of no less than $143,990.84,
loss of future income, statutory and prejudgment interests, and
attorney's fees and costs. Id. at 19.

SLLC filed the *Motion to Dismiss* on February 20, 2025, arguing
that dismissal under Rule 12(b)(6) is appropriate because
Dilusso's claims are time-barred, fail to satisfy the stringent
pleading requirements for fraud under Rule 9(b), and are otherwise

---

[3] This finding aligns with the FINRA judgment in 2022 which dismissed Dilusso's
claims as being time-barred by a six-year statute of limitations.

[4] The *Complaint* characterizes the claims differently at various points and
appears to conflate some together.

deficient. (Docket No. 11). SLLC avers that Dilusso's claims are really securities law claims subject to the Puerto Rico Uniform Securities Act ("PRUSA"), and thus time barred. Id. Dilusso filed a *Response* on March 24, 2025, rebutting SLLC's arguments. (Docket No. 18). On April 21, 2025, SLLC filed its *Reply*. (Docket No. 23).

### III. LEGAL STANDARD

To determine if a complaint has stated a plausible, non-speculative claim for relief, a court must determine whether "*all* the facts alleged [in the complaint], when viewed in the light most favorable to the plaintiffs, render the plaintiff's entitlement to relief plausible." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 14 (1st Cir. 2011) (emphasis in original). This requires treating "any non-conclusory factual allegations in the complaint as true." Nieto-Vicenty v. Valledor, 984 F.Supp. 2d 17, 20 (D.P.R. 2013); Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (courts should take "the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor"). A claim holds the facial plausibility necessary to evade dismissal at the Rule 12(b)(6) stage when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted) (while "plausibility" is not the same as "probability," it requires

more than a "sheer possibility that a defendant has acted unlawfully.").

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). Further, a complaint will not stand if it offers only "naked assertion[s] devoid of further factual enhancements." Ashcroft, 556 U.S. at 678 (internal quotation marks and citation omitted). Courts may consider: "(a) 'implications from documents' attached to or fairly 'incorporated into the complaint,' (b) 'facts' susceptible to 'judicial notice,' and (c) 'concessions' in plaintiff's 'response to the motion to dismiss.'" Schatz, 669 F.3d at 55–56 (quoting Arturet-Vélez v. R.J. Reynolds Tobacco Co., 429 F.3d 10, 13 n.2 (1st Cir. 2005)). Courts are permitted to "consider pleadings filed in a plaintiff's prior lawsuits." Austin v. Dougles G. Peterson & Assocs., C.A. No. 08-30128, 2008 WL 5070612, at *1 (D. Mass. Nov. 18, 2008) (citing Alt. Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001)).

## IV. APPLICABLE LAW

This Court must apply Puerto Rico law when it sits in diversity. See Goya de P.R., Inc. v. Rowland Coffee, 206 F.Supp. 2d 211, 217 n.9 (D.P.R. 2002). When the Court encounters a question

of law not yet addressed by the Puerto Rico Supreme Court, its

task is to ascertain what rule a Commonwealth court would most

likely apply. *See* Quality Cleaning Prods. R.C., Inc. v. SCA Tissue

N. Am., LLC, 794 F.3d 200, 206 (1st Cir. 2015).

## A. Puerto Rico Uniform Securities Act

PRUSA is the Puerto Rico law governing securities fraud. *See*

P.R. Laws Ann. tit. 10, § 851, *et seq.* The Puerto Rico Supreme

Court has held that PRUSA "is a special law" and "should prevail

over other provisions of general laws such as the Code of Commerce

and the Civil Code" under the principle *lex specialis derogat legi*

*generali*. PaineWebber, Inc. v. First Boston, Inc., 136 F.P.R. 541,

544-45 (P.R. 1994); *see also* Antonin Scalia and Bryan A. Garner,

Reading Law: The Interpretation of Legal Texts 183, 186 (1st ed.

2012). PRUSA allows civil liability to be imposed against any

person who:

> Offers or **sells a security by means of a false
> statement of a material fact or omitting to
> state a material fact** needed to prevent that
> any statement made, in the light of the
> circumstances under which it was made, leads
> to misunderstanding (the buyer not knowing of
> the falsehood or omission), and does not
> support the burden of proof that he did not
> know, and in exercising reasonable prudency
> could not have known of the falsehood or
> omission.

P.R. Laws Ann. tit. 10, § 890(a)(2) (emphasis added). The buyer

may recover the price paid for the security, applicable interest,

costs and attorney's fees, and damages in the amount that could be

recovered upon returning the security, absent the price when the buyer disposed of the security and interest at the rate applicable to judicial awards when the security was disposed of. *See* id.

Puerto Rico courts have interpreted PRUSA "more broadly to preclude plaintiffs from bringing claims that sound in securities fraud, even when those claims are brought pursuant to a common law theory"– such as a breach of contract claim "involving a securities transaction and an alleged material misrepresentation— more than two years after the sale contract has been executed." Fernández v. UBS AG, 222 F.Supp. 3d 358, 385 (S.D.N.Y. 2016) (collecting cases). *But see* Olivella Zalduondo v. Triple S, 187 D.P.R. 625, 642-46 (P.R. 2013) (holding that PRUSA does not cover every security-related dispute because it "regulates a specific type of commercial relationship" involving a "securities transaction carried out by entities engaged in" that field of business).

PRUSA's statute of limitations bars civil suits from being brought under § 890 more than two years after the execution of the securities sales contract. P.R. Laws Ann. tit. 10, § 890(e); *see* In re Fin. Oversight and Mgmt. Bd. for P.R., 578 F.Supp. 3d 267, 291 (D.P.R. 2021) (after two years, § 890(e) "extinguishes any claims for fraud under Puerto Rico law."); Ambert v. Caribe Equity Grp., Inc., Civ. No. 11-1254, 2011 WL 4626012, at *7 (D.P.R. Sept. 30, 2011)). PRUSA's statute of limitations is a civil law caducity period, meaning that the passage of two years extinguishes the

cause of action. *See* <u>Cooperativa de Ahorro Y Credito Aguada v.</u>

<u>Kidder, Peabody & Co.</u>, 799 F.Supp. 261, 263 n.4 (D.P.R. 1992),

*rev'd on other grounds*, *reh'g denied*, 993 F.2d 269 (1993).

## V.    DISCUSSION

### A. Plaintiff's claims are time-barred under PRUSA

*i. It is unclear what contract is at issue*

As a preliminary matter, the Court notes that it is unclear

which contract SLLC allegedly breached and what the contents of

that contract are. In its arguments, Dilusso references: (1)

"account   opening   documents"   that   govern   the   contractual

relationship between Dilusso and SLLC; (2) the "Account and

Financial Advisor Agreement" that created SLLC's duties of care

towards Dilusso; (3) "Client Relationship Agreements"; (4) "SLLC

Broker Dealer's Account Contracts," the "brokerage contract," and

the "Broker Dealer contract"; and (5) the "securities contract."

(Docket Nos. 1 ¶¶ 4, 22, 32, 63, 77 and 18 at 6, 11). It is unclear

whether all these names refer to the same contract between the

parties. Alongside its *Response*, Dilusso submits what appears to

be part of Puerto Rico Regulation 6078 ("P.R. 6078"). (Docket No.

18-2).   This   document   has   been   marked   with   unintelligible

signatures in places and may be part of its contract with SLLC,

but it does not name the parties, is incomplete, and is only

briefly referenced in the motion. (Docket No. 18-2). In a suit

purportedly centering on contract law claims, it is odd that

Plaintiff has not clearly pled which is the operative contract and what are its provisions. *See* Jakobiec v. Merrill Lynch Life Ins. Co., 711 F.3d 217, 223 n.15 (1st Cir. 2013) (noting it is odd that the parties did not provide the contract at issue in a breach of contract claim, "or at the very least stipulated to what it provides.").

    *ii. Plaintiff cannot avoid PRUSA through artful pleading*

    The Court finds that PRUSA is the appropriate source of law for Dilusso's claims, despite Dilusso's efforts to evade PRUSA and its statute of limitations via artful pleading. In making this determination, the Court is guided by the parties' filings and applicable caselaw, being careful not to mischaracterize the nature of the *Complaint*. *See* Limone v. Condon, 372 F.3d 39, 46 (1st Cir. 2004) (noting that courts must be careful "not to permit a defendant to hijack the plaintiff's complaint and recharacterize its allegations" for their own benefit); Jorge Rivera Surillo & Co., Inc. v. Falconer Glass Indus., Inc., 37 F.3d 25, 29 (1st Cir. 1994) (noting the First Circuit "has held that litigants cannot circumvent a specific provision of the Puerto Rico Code by characterizing their claims generally as a 'breach of contract'" to benefit from a longer statute of limitations period."); Fernández, 222 F.Supp. 3d at 385 ("[C]ourts should be wary of artful pleading, and regardless of a plaintiff's characterization of a claim as based on a theory other than falsity, courts must

examine whether fraud is nonetheless an essential part of the
plaintiff's theory.").

In particular, the Court looks to PaineWebber, Inc. of P.R.,
136 D.P.R. 541 (1994), a case that bears striking similarities to
the one now before the Court. The plaintiff, PaineWebber, had
purchased a security from the defendant, First Boston, under the
belief that the security was tax-exempt; but two-and-a-half years
after completing the purchase, PaineWebber discovered that the
security was not tax-exempt, requiring it to rescind the sale and
compensate its clients for their losses. Id. at 542. PaineWebber
sued First Boston in Commonwealth court for breach of contract,
but its complaint was dismissed as being time-barred under PRUSA.
Id. at 542-43. The Supreme Court of Puerto Rico affirmed the
dismissal because PaineWebber's claims stemmed from the purchase
of securities and, as PRUSA regulates securities transactions in
Puerto Rico, the principal of *lex specialis* made PRUSA the
appropriate source of law. Id. at 544-46.

Here, both the *Complaint* and *Response* repeatedly and
explicitly state that Dilusso's claims rest, in part, on the
purchase of securities. (Docket Nos. 1 and 18). This type of
business dispute is one contemplated by PRUSA because it involves
a securities transaction and a subsequent claim that there was a
material misrepresentation as to the characteristics of the
securities. PaineWebber is thus strikingly similar to the instant

case, as both cases involve parties who purchased and invested in securities, realized their investments had serious flaws, and sought relief from provisions of the Puerto Rico Civil Code to avoid PRUSA's more stringent statute of limitations. Dilusso challenges both the transaction and related Investment Strategy as fraudulent in nature— but as the strategy involved the purchase and hold of securities and is inextricably linked to the way the securities were characterized at the time of their purchase, this is really a case about the purchase of securities to which PRUSA applies. (Docket Nos. 1 and 18); *see* Olivella Zalduondo, 187 D.P.R. at 642-46.

The *Complaint* revolves around the *purchase* of CEFs from SLLC such that securities fraud strikes at the core of Dilusso's allegations. (Docket No. 1). The factual background repeatedly refers to recommendations from SLLC involving the "purchase" or "purchase and hold" of CEFs. Id. ¶¶ 27, 38, 44, 47-48. Dilusso argues that SLLC's recommendation to follow the Investment Strategy was "unsuitable" because it involved "materially incorrect representations" that "Dilusso was buying" CEFs that were "only invested in short-term [Puerto Rico] bonds" which were, in turn, "very safe" and would "always pay" monthly dividends and their full principal amount at maturity. Id. ¶¶ 27-28. After 2013, SLLC allegedly recommended that Dilusso hold onto the CEFs for the same reasons stated above; namely that they were safe and repayment

was guaranteed. Id. ¶ 29. Any advice from SLLC during this period appears to have consisted of nothing more than repeating the same promises made to Dilusso at the time the CEFs were purchased and invested in short-term Puerto Rico bonds.

Dilusso argues that SLLC committed three actionable breaches under Puerto Rico contract law: (1) it implemented the "unsuitable" Investment Strategy; (2) it used "material misrepresentations" to deceive Dilusso into following the Investment Strategy; and (3) it used "material omissions" to deceive Dilusso into following the Investment Strategy, which it claims was unsuitable since inception. Id. ¶¶ 34-36. This language mirrors part of PRUSA. See P.R. Laws Ann. tit. 10, § 890(a)(2). As with the Complaint's factual background, Dilusso's allegations cannot be severed from its decision to purchase the CEFs pursuant to the Investment Strategy. The alleged material misrepresentations and omissions presented by Dilusso relate back to the conditions under which Dilusso invested with SLLC, namely the stability, safety, and profitability of the CEFs and the Puerto Rico bonds that the CEFs were invested in. See id. Furthermore, as discussed above, Dilusso's failure to identify specific contractual provisions that were violated or to provide the Court with a copy of the contract serves as further indication that the issue at hand is not one of contract law; rather, contract law is being used to sidestep PRUSA's statute of limitations.

This is strengthened by language in Dilusso's *Response*, which
asserts that SLLC's liability stems not from the "sale of
securities, but from the breach of its suitability and fiduciary
duties during the performance of the brokerage contract to put
together" the Investment Strategy. (Docket No. 18 at 8). If that
was the end of Dilusso's claims, the Court agrees that PRUSA would
not apply here. However, these assertions are contradicted by the
plain language in Dilusso's filings. For example, the *Response*
states that SLLC's alleged bad acts include "the irresponsible
inducement to buy and hold the PR securities." Id. at 6. However,
the following sentence states that SLLC's alleged fault "does not
arise from the sale of the securities," but rather from the breach
of its suitability and fiduciary duties because SLLC recommended
Dilusso follow the Investment Strategy. Id. at 5-6.

Notably, the *Complaint* references alleged "gross violations
of the federal securities laws," but Dilusso brings no federal
claims here and this language has presumably been copied from
Dilusso's filings in its first federal case, which did rely on
securities law claims. (Docket No. 1 ¶ 77); *see* Amgen Inc. v. Conn.
Ret. Plans and Trust Funds, 568 U.S. 455, 461 (2013) (a plaintiff
bringing a private securities-fraud action under § 10(b) of the
Securities Exchange Act of 1934 must prove, among other
requirements, "a material misrepresentation or omission by the
defendant" connected with the sale or purchase of a security and

relied upon by the plaintiff); SDM Holdings, Inc. v. USB Fin.
Servs., Inc. of P.R., Civil No. 12-1663, 2016 WL 9461324, at *4
(D.P.R. Mar. 1, 2016) (same); Olivella Zalduondo, 187 P.R. at 636-
37 (noting that PRUSA prohibits the use of false statements of
material fact in the offer, sale, or purchase of securities,
committing fraud in advisory activities, or market manipulations
through false or misleading information).

    As Dilusso's claims invoke securities fraud, the Court
concludes that the Puerto Rico Supreme Court would invoke *lex
specialis* and apply PRUSA rather than the more general breach of
contract provisions under the Puerto Rico Civil Code. *See*
PaineWebber, Inc., 136 D.P.R. at 544-45 ("securities transactions
in Puerto Rico are governed by [PRUSA]. Since [PRUSA] is a special
law it should prevail over other provisions of general laws such
as...the Civil Code."); Fernández, 222 F.Supp. 3d at 385 (PRUSA
may be applied "more broadly to preclude plaintiffs from bringing
claims that sound in securities fraud, even when those claims are
brought pursuant to a common law theory"). This is true even after
viewing all facts alleged in the *Complaint* "in the light most
favorable to" Dilusso. Ocasio-Hernandez, 640 F.3d at 14.

    *iii. PRUSA's statute of limitations bars Plaintiff's claims*

    Having determined that PRUSA is the appropriate source of law
for Plaintiff's claims, the Court turns to PRUSA's two-year statute
of limitations. The *Complaint* was filed on October 15, 2024.

(Docket No. 1). Dilusso began purchasing CEFs pursuant to the
Investment Strategy in 2012 and continued purchasing CEFs through
2015. Id. ¶¶ 27, 30. There is caselaw in the District of Puerto
Rico for the proposition that PRUSA's statute of limitations starts
to run from notice of a plaintiff's injury, not the purchase of a
security. *See* In re Fin. Oversight and Mgmt. Bd. for P.R., 578
F.Supp. 3d at 291 (stating that PRUSA's statute of limitations
starts running "from the moment damage is known" and a plaintiff
has "knowledge of the injury" when they have "notice of the injury,
plus notice of the person who caused it.") (quoting Bado-Santana
v. Ford Motor Co., 283 F.Supp. 2d 520, 527 (D.P.R. 2003)). However,
PRUSA's text identifies the date of purchase of the security in
question as the trigger for the running of its statute of
limitations. *See* P.R. Laws Ann. tit. 10, § 890(e). Based on the
facts alleged in the *Complaint*, PRUSA's statute of limitations
began to run *at the latest* in 2019 under the notice theory, when
Dilusso avers it first learned of problems with the CEFs, or in
2015 under the purchase theory, the latest date in which Dilusso
purchased CEFs under the Investment Strategy. (Docket No. 1 ¶¶ 29-
31). This means the statute of limitations would have expired in
2021 or 2017, respectively.

The unsuccessful FINRA arbitration was filed in January 2022,
and the first federal case was filed in June 2023. (Docket No. 1
¶¶ 5, 9). As PRUSA's statute of limitations is a civil law caducity

period, equitable tolling does not apply. *See* Cooperativa de Ahorro Y Credito Aguada, 799 F.Supp. at 263 n.4. The passage of over two years extinguished Dilusso's claims before the filing of the FINRA arbitration or the first federal case, rendering the *Complaint* time barred.

After taking Dilusso's well-pled facts as true and drawing all reasonable inferences in its failure, the Court concludes the *Complaint* brings claims that are subject to PRUSA and thus time barred. *See* Schatz, 669 F.3d at 55 (1st Cir. 2012). As Dilusso has failed to state a claim upon which relief could be granted, dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate.

## VI.  CONCLUSION

For the foregoing reasons, Defendant Santander Securities, LLC's *Motion to Dismiss* at Docket No. 11 is hereby **GRANTED**. Dilusso Properties Corp.'s claims are hereby **DISMISSED WITH PREJUDICE**. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 4th day of September 2025.

                              s/Raúl M. Arias-Marxuach
                              UNITED STATES DISTRICT JUDGE